Estate of Clinton H. Martin, Deceased, Marjorie L. Goldman, Temporary Administratrix, and Estate of Marion E. Martin, Deceased, Marjorie L. Goldman, Executrix v. Commissioner.
Estate of Martin v. Commissioner
Docket No. 59593.
United States Tax Court
T.C. Memo 1959-20; 1959 Tax Ct. Memo LEXIS 233; 18 T.C.M. (CCH) 100; T.C.M. (RIA) 59020; January 30, 1959
*233 Harry G. Goldman, Esq., for the petitioners. Robert S. Bevan, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the income tax of decedents for the year 1950 in the sum of $1,927.90 and an addition to tax pursuant to section 293(b) of the Internal Revenue Code of 1939 in the sum of $963.95. The deficiency results from respondent's determination that decedents "realized additional taxable income in the amount of $7,201.91 which [they] did not report in [their] return" and from his disallowance, as unsubstantiated, of deductions in the total net [1] amount of $1,932.76. It is stipulated that "[the] only issue being contested in this case before the Tax Court by the petitioners is the assertion by respondent for the year 1950 of the 50% fraud penalty, under Section 293(b) of the Internal Revenue Code of 1939." Decedents died after filing their petition herein. On October 3, 1958, a joint motion of the parties herein for substitution of parties and to amend caption was granted. Findings of Fact A written stipulation of *234 facts was filed herein by the parties at the trial of this case. We find the facts to be as stipulated and incorporate herein by this reference the stipulation, together with the exhibits attached thereto. Clinton H. Martin during the taxable year ended December 31, 1950, the taxable year involved herein, was engaged in the practice of medicine as a dermatologist and syphilologist, with two offices, one in his home at 401 King Avenue, City Island, New York, and the other with the University Group at 2325 University Avenue, Bronx, New York. He divided his time between these two offices. The University Group consisted of various medical specialists who occupied offices on the same floor of the same building for the purpose of providing their patients with specialized medical treatment. Clinton practiced medicine from 1920 to July 1, 1955, when he retired because of illness. He continued to practice medicine at the two offices from 1951 until his retirement on July 1, 1955. During the years 1950 through July 1, 1955, Clinton was director of the visiting staff of dermatological service of Fordham Hospital, New York, an assistant dermatologist at Flower-Fifth Avenue Hospital, New York *235 City, and an attendant dermatologist at Seton Hospital, New York City. He did not receive any salary from these institutions, but derived his income from private practice. Clinton H. Martin and Marion E. Martin (hereinafter sometimes referred to as decedents) were husband and wife. They filed a joint income tax return for the taxable year ended December 31, 1950, on March 15, 1951, with the collector of internal revenue for the third collection district of New York. In this return decedents reported "Profit from Business or Profession" in the amount of $9,856 and "Income from Dividends" in the amount of $700, and their total income as the sum of these two items. Deductions were taken on account of contributions, taxes, medical and dental expenses, and "Miscellaneous" in the respective amounts of $435, $515.38, $692.38, and $5,114.89. The net income reported was $3,798.35. Decedents filed joint income tax returns for the taxable years ended December 31, 1951, December 31, 1952, December 31, 1953, and December 31, 1954. Each of these returns was filed with the collector of internal revenue for the third collection district of New York or with his successor, the director of internal *236 revenue for Upper Manhattan. The joint returns of decedents for the years 1951, 1952, 1953, and 1954 were filed on March 15, 1952, March 15, 1953, March 15, 1954, and April 15, 1955, respectively. In their return for 1951 decedents reported total wages in the amount of $9,975 and income from dividends in the amount of $700, and their total income in the sum of these two amounts. The net income reported was $4,051.25. In their return for 1952 they reported "Profit from Business or Profession" in the amount of $9,564, "Income from Dividends" in the amount of $400, "Income from Interest" in the amount of $300, and their total income in the sum of these three items. The net income reported was $3,450.17. In their return for 1953 they reported gross "Profit from Business or Profession" in the amount of $16,295.37, and net profit in the amount of $10,486.58, "Income from Dividends" in the amount of $711, and "Income from Interest" in the amount of $585.41. Their total income reported was $11,783.09, and their net income reported for this year was $10,783.09. The joint returns of decedents for the years 1950, 1951, 1952, and 1953 were prepared by decedent Clinton H. Martin. The joint *237 return of decedents for the year 1954 was prepared with the assistance of an accountant named E. B. Baker, 25 Broad Street, New York, N. Y.
An examination of the joint income tax return of decedents for the year 1950 was commenced by Revenue Agent Nathan Citrin during November 1953. During December 1953 Citrin examined books and records in which decedent Clinton H. Martin had recorded income received by him during 1950 from his medical practice. Clinton became cognizant in December 1953 of the examination being conducted by Citrin of the joint return filed by decedents for the taxable year 1950. During each of the years 1950 through 1954 decedent Clinton H. Martin recorded the fees received from his medical practice in two separate diaries. During each year one of said diaries was maintained in one of his offices while the other diary was maintained in his other office. The two diaries for the year 1950 show that he received fees in a total amount of $16,779 from his medical practice during the taxable year 1950. On the joint return filed by decedents for the taxable year 1950 only $9,856 of the fees received by Clinton were reported as income. During the taxable year ended December 31, 1950, a *238 savings account was maintained in the names of decedents at The Dollars Savings Bank, Fordham Office, Bronx, New York City. During the same taxable year a savings account was maintained in the names of decedents at the Dry Dock Savings Institution, New York City. The interest income received by decedents from these accounts during the year 1950 amounted to $278.91. Said interest was not reported as income by decedents on their joint return for the year 1950. The diaries maintained by Clinton for each of the years 1951, 1952, 1953, and 1954 show that he received from his medical practice fees in the following amounts: 1951
$16,978.00
1952
17,196.00
1953
16,770.50
1954
14,940.85
On the joint returns filed by decedents for the years 1951, 1952, 1953, and 1954 fees in the following amounts were reported as the income received by Clinton from his medical practice: 1951
$ 9,975.00
1952
9,564.00
1953
16,770.50
1954
14,940.85
During the years 1951 and 1952 decedents also failed to report the following income: 1951
Interest Income
$314.90
Dividends
431.00
1952
Interest Income
$118.37
Dividends
71.00
Capital Gains
239.00
*239 Decedent Clinton H. Martin died on December 19, 1957, at the age of 64 years. The causes of death were officially noted as (a) acute cerebral hemorrhage, (b) hypertensive heart disease, and (c) diabetes Mellitus. Beginning about 1949 Clinton began to slow down physically; his hands became unsteady and he went to bed earlier than before. For 2 days in November 1954 and 5 days in December 1954 he was a patient in the Square Sanitarium, Inc. The diagnosis on the occasion of his first visit to the hospital was "cerebral vascular spasm" and on the occasion of his second visit it was "cerebral thrombosis." In August of 1955 he was a patient in the same institution for 8 days. The discharge diagnosis was cerebral arteriosclerosis complicated by cerebral thrombosis. In June 1957 he was examined by a doctor who gave him a neuropsychiatric examination and found him to be confused, apathetic, impaired in memory, with spastic gait, "somewhat ataxic," with "increased reflexes" and "bilaterial Babinski" (a sign of pyramidal disease in the brain), and having great difficulty in getting up from his chair. He also had diuresis. The "history" given by Clinton and a woman companion at the time of *240 this examination was to the effect that there was a change in Clinton about 8 years previously in that he had periods of confusion and a change in gait. The stipulation reads in part as follows: "The only issue being contested in this case before the Tax Court by the petitioners is the assertion by respondent for the year 1950 of the 50% fraud penalty, under Section 293(b) of the Internal Revenue Code of 1939. Petitioners are not contesting the deficiency in income taxes asserted by respondent for the year 1950. "The taxable years 1951 and 1952 are not before the Tax Court. Respondent asserted against Dr. and Mrs. Martin for the taxable years 1951 and 1952, deficiencies in income taxes and 50% fraud penalties under Section 293(b) of the Internal Revenue Code of 1939. By agreement (Form 870), which agreement was executed when Mr. Nathan Goodman was the tax representative of the deceased taxpayers, the liabilities for the years 1951 and 1952 have been assessed by respondent against petitioners. The petitioners do not plan to contest, in connection with the years 1951 and 1952, the deficiencies in income taxes asserted against Dr. and Mrs. Martin for those years, but petitioners *241 do plan to contest the 50% fraud penalties asserted against Dr. and Mrs. Martin for the years 1951 and 1952." A part of the deficiency here involved is due to fraud with intent to evade tax. Opinion KERN, Judge: In this case a physician and his wife (both now deceased) filed a Federal income tax return for the year 1950 in which was reported $9,856 of professional income instead of the correct amount of $16,779. Comparable understatements of income were made in their returns for the succeeding years 1951 and 1952. In their return for 1953, which was filed after they were aware of the fact that their returns for prior years were under investigation, they reported their income accurately. As a result of their failure to report large amounts of their professional income (consisting of all of the receipts of one of the two offices maintained by the physician), there was a discrepancy of 200 per cent or more between the real net income of decedents and their reported net income for each of the years 1950, 1951, and 1952, without any consideration of the disallowed deductions. The business records kept by the deceased physician appear to have been adequate. In our opinion these facts, *242 as related to a man having a professional education and carrying on his practice in years undisturbed by the exigencies of war, constitute convincing proof that the deficiency in income tax due to the omission from the return of professional income is due to fraud with intent to evade tax. See Rogers v. Commissioner, 111 Fed. (2d) 987. The only contention advanced by petitioners, which is worthy of comment, is to the effect that the decedent doctor who made out the return for 1950 was suffering from arteriosclerosis in 1955 (and from other serious disorders in 1957), that arteriosclerosis is a progressive disease which, if noticeable in 1955, was probably affecting the deceased doctor in 1950 and 1951 (causing the slowing up and unsteadiness of hand noted by a neighbor as early as 1949), and that one of the first effects of arteriosclerosis on an intellectual worker is the impairment of judgment. The result which petitioners would have us reach by this argument is that the deceased doctor had poor judgment in 1951 (when he made out the return for 1950), and therefore could not have had the intent to defraud required by section 293(b) of the Internal Revenue Code of 1939. *243 It is noted that there is no contention that the doctor was non compos mentis in 1951 or did not know right from wrong, or was not aware of the significance of his actions, but merely a contention that his judgment was impaired. In our opinion this argument is without merit. The stipulated facts in the instant case show that the deceased doctor blatantly understated his professional income for 3 years and until his understatements were discovered. The fact that his fraud was not a clever one does not change its character. We may comment that anyone attempting to defraud the United States shows ipso facto a certain lack of judgment regardless of his mental acuteness. The fact, if it be a fact, that the deceased doctor was not as acute mentally in 1951 as he was in 1948 does not negative the existence of a fraudulent intent in connection with his income tax return for 1950. Decision will be entered for respondent. Footnotes
1. After the allowance of a standard deduction in the amount of $1,000.↩